IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RWH CAPITAL, L.L.C.,<br><br>Plaintiff,<br><br>vs.<br><br>JOSHUA LIPPIAT, BRANT C. DESHOTELS, COREY N. DESHOTELS, and KNOVAL, L.L.C.,<br><br>Defendants. | **8:26-CV-134**<br><br>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |

RWH Capital, LLC (RWH Capital) sued Joshua Lippiat, Brant C. Deshotels, Corey N. Deshotels, and Knoval, LLC (Defendants) asserting eleven claims—four RICO theories and seven state-law claims—related to wrongful conduct that allegedly interfered with RWH Capital's business relationships with current and potential clients. Filing 4. Defendants filed the Motion to Dismiss Plaintiff's Amended Complaint (Motion to Dismiss) now before the Court. Filing 18. For the reasons stated below, the Court grants Defendants' Motion to Dismiss.

## I. INTRODUCTION

### A. Factual Background

RWH Capital is a Delaware limited liability company.[1] Filing 4 at 1 (¶ 1). In August 2016, RWH Capital hired Brant C. Deshotels, a Florida citizen and resident, as an independent contractor to research business opportunities and solicit potential customers. Filing 4 at 3 (¶ 16). In August 2019, Brant C. Deshotels and Corey N. Deshotels, a Louisiana citizen and resident, formed the

[1] RWH Capital's principal place of business is contested by the Defendants. *See* Filing 18-1 at 1. RWH Capital alleges that its principal place of business has always been Waterloo, Nebraska. Filing 4 at 1 (¶ 1); Filing 19 at 1. The veracity of that assertion is central to the Court's analysis of jurisdiction and will therefore be discussed at length below.

Florida limited liability company Knoval, LLC. Filing 4 at 3 (¶ 20). RWH Capital alleges that "Knoval was set up for the purposes of mimicking [RWH Capital's] business operation." Filing 4 at 4 (¶ 21). Then, in 2022, RWH Capital hired Joshua Lippiat, a Georgia citizen and resident, as an independent contractor to research business opportunities and solicit potential customers. Filing 4 at 3 (¶ 16).

RWH Capital alleges that the Defendants engaged in various fraudulent actions through various means "to divert potential customers and current customers to entities controlled by the individual Defendants, including [Knoval, LLC]." Filing 4 at 4 (¶ 25); *see also* Filing 4 at 4–5 (¶¶ 22–35). For example, RWH Capital alleges one instance in particular:

> 26. On April 20, 2023, Lippiat, utilizing the email address given to him by [RWH Capital], was negotiating a business deal with Reliable Relamping located in Saranac, Michigan. The email address was joshua.lippat@rwhenergy. The April 20, 2023, email was initiated by [Brant C. Deshotels] using his Knoval email address brantdeshotels@knoval.com.
>
> 27. The April 20th email apparently obtained an attachment from Brant Deshotels replying to Reliable Relamping's request for a quote.
>
> 28. On May 1, 2023, Brian Asher of Awala Hardwood sent an email to [Brant C. Deshotels] and Lippiat asking whether [RWH Capital] or Knoval would be handling the contract with Reliable Relamping.
>
> 29. [RWH Capital] never received any information about the business opportunity with Reliable Relamping.

Filing 4 at 4 (¶¶ 26–29).

On March 25, 2024, Brant C. Deshotels filed an action in Florida state court (Florida case) against RWH Capital and its owner, Shane J. Osborn. Filing 18-1 at 2; Filing 18-4. In the Florida case, Brant C. Deshotels alleges various claims that arise from his partnership with RWH Capital from 2016 through 2023, and RWH Capital's alleged failure to make partnership distributions. Filing 18-1 at 3; Filing 18-4 at 13–20 (¶¶ 74–118). On August 21, 2025, the parties in the Florida case began mediation which included a joint forensic accounting. Filing 18-1 at 2. On August 25,

2025, the parties to the Florida case stipulated to stay the Florida case pending the completion of the agreed-to forensic accounting. Filing 18-1 at 2–3.

### B. Procedural Background

On April 2, 2026, RWH Capital filed the Complaint against the Defendant Knovall, LLC, and Individual Defendants Joshua Lippiat and Brant and Corey Deshotels in the United States District Court for the District of Nebraska. Filing 1. On April 22, 2026, RWH Capital filed the Amended Complaint in compliance with the Court's order to properly allege subject matter jurisdiction, Filing 3. Filing 4. In the Amended Complaint, RWH Capital alleges eleven claims. Counts I, II, III, and IV allege violations of each subsection of the Racketeer Influence and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964. Filing 4 at 5–8 (¶¶ 36–59). Counts V and VI allege breach of contract claims against Defendant Lippiat and Defendant Brant Deshotels, respectively. Filing 4 at 8–9 (¶¶ 60–75). RWH Capital also alleges claims of tortious interference with contracts (Count VII), civil conspiracy (Count VIII), interference with prospective economic relations (Count IX), and fraudulent misrepresentation (Count X) against all Defendants. Filing 4 at 9–11 (¶¶ 76–100). Finally, Count XI alleges piercing the corporate veil against Defendants Brant Deshotels, Corey Deshotels, and Knoval LLC. Filing 4 at 11 (¶¶ 101–05).

On June 29, 2026, Defendants responded by filing the Motion to Dismiss RWH Capital's Amended Complaint (Motion to Dismiss) now before the Court. Filing 18. The parties filed the appropriate briefs. Filing 18-1; Filing 19; Filing 20.

## II. LEGAL ANALYSIS

Defendants assert a comprehensive set of arguments supporting the Motion to Dismiss. *See* Filing 18-1. The Court addresses personal jurisdiction first and finding that issue dispositive does not reach the remaining arguments for dismissal.

### A. The Parties' Arguments

Defendants seek dismissal of RWH Capital's Amended Complaint for lack of personal jurisdiction. Filing 18 at 5–10. Defendants contend that "Defendants do not reside in or engage in 'substantial, continuous and systematic' activities in Nebraska for general jurisdiction to apply." Filing 18-1 at 7 (citing *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 416 (1984)). Defendants further argue that "[s]pecific jurisdiction is also absent" because "[e]very act and omission giving rise to this lawsuit, formation of agreements, performance obligations, and alleged breaches, occurred while [RWH Capital] was Delaware-based and conducting business in Florida." Filing 18-1 at 8–9. Because "Defendants had no contact with Nebraska related to the claims at issue, . . . directed no activity related to the business relationship toward Nebraska and were unaware [RWH Capital] had any connection to Nebraska," Nebraska cannot assert jurisdiction over Defendants and the action should be dismissed. Filing 18-1 at 10.

In response, RWH Capital contends that the Court has personal jurisdiction over Defendants. Filing 19 at 3–8. RWH Capital argues that the principles of "intentional tort jurisdiction and effects test applicable to fraud-based claims" support the Court's exercise of jurisdiction. Filing 19 at 4. Specifically, RWH Capital contends that Defendants' "fraudulent communications were directed to a Nebraska business, and the economic harm was suffered in Nebraska" because RWH Capital's "principal place of business is in Nebraska." Filing 19 at 4. RWH Capital further counters that it "did not 'relocate' to Nebraska after the alleged wrongdoing; [RWH Capital] operated in Nebraska and Defendants directed their fraudulent conduct at [RWH Capital] in Nebraska." Filing 19 at 8. Additionally, RWH Capital argues that the Eighth Circuit's five-factor minimum contacts analysis "weighs decisively in favor of exercising jurisdiction over Defendants." Filing 19 at 5, 5–7.

## B. Relevant Legal Standards

*1. Rule 12(b)(2) Standards*

"When personal jurisdiction is challenged by a defendant, the plaintiff bears the burden to show that jurisdiction exists." *Fastpath, Inc. v. Arbela Techs. Corp.*, 760 F.3d 816, 820 (8th Cir. 2014). To establish a prima facie showing of personal jurisdiction, the plaintiff must "plead[] sufficient facts 'to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Bros. & Sisters in Christ, LLC v. Zazzle*, 42 F.4th 948, 951 (8th Cir. 2022) (quoting *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588, 592 (8th Cir. 2011)). The Court tests the plaintiff's prima facie showing "not by the pleadings alone, but by affidavits and exhibits supporting or opposing the motion." *Fastpath, Inc.*, 760 F.3d at 820 (internal quotation marks omitted) (quoting *K-V Pharm. Co.*, 648 F.3d at 592). "At the motion stage, the action should not be dismissed for lack of jurisdiction if the evidence, viewed in the light most favorable to [RWH Capital], is sufficient to support a conclusion that the exercise of personal jurisdiction over [Defendants] is proper." *Creative Calling Sols., Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (first citing *Radaszewski ex rel. Radaszewski v. Telecom Corp.*, 981 F.2d 305, 309 (8th Cir. 1992); and then citing Fed. R. Civ. P. 56(a)).

*2. Personal Jurisdiction Standards*

"A federal court may exercise jurisdiction 'over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution.'" *Miller v. Nippon Carbon Co., Ltd.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (quoting *Dakota Indus., Inc. v. Ever Best Ltd.*, 28 F.3d 910, 915 (8th Cir. 1994)). Nebraska's "long-arm statute," Neb. Rev. Stat. § 25-536, permits jurisdiction to the maximum extent allowed by the Due

Process Clause of the Fourteenth Amendment to the United States Constitution.[2] *See Hand Cut Steaks Acquisitions, Inc. v. Lone Star Steakhouse & Saloon of Nebraska, Inc.*, 905 N.W.2d 644, 661 (Neb. 2018); *Wade v. Pottawattamie County*, 100 F.4th 991, 993 (8th Cir. 2024). "[The Court's] task, then, is to determine whether the exercise of personal jurisdiction comports with due process." *Morningside Church, Inc. v. Rutledge*, 9 F.4th 615, 619 (8th Cir. 2021) (quoting *Henry Law Firm v. Cuker Interactive, LLC*, 950 F.3d 528, 532 (8th Cir. 2020)).

"The principles of personal jurisdiction under the Due Process Clause are well established." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003). "[C]ritical to the due process analysis . . . is that the defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there." *Kaliannan v. Liang*, 2 F.4th 727, 733 (8th Cir. 2021) (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). "The relevant conduct and connections for the due process analysis depend on whether personal jurisdiction is alleged to be general or specific." *Bros. & Sisters in Christ*, 42 F.4th at 951–52 (citing *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358–59 (2021)). Here, RWH Capital only asserts that the Defendants are subject to specific personal jurisdiction in Nebraska. Filing 19 at 3–4, 3 n.1.

"In analyzing whether specific jurisdiction comports with due process, [the Court] must decide whether the defendant has certain minimum contacts with the forum state and whether the plaintiff['s] claims 'arise out of or relate to the defendant's contacts.'" *Kaliannan*, 2 F.4th at 733 (quoting *Ford Motor Co.*, 592 U.S. at 359). The minimum contacts inquiry must consider a defendant's contacts with Nebraska itself, not a defendant's contacts with the persons who reside

[2] The Court rejects the Defendants' argument that Neb. Rev. Stat. § 25-536 does not apply because "[RWH Capital] was not domiciled in Nebraska when the alleged acts occurred." Filing 18-1 at 10. Rather, "[f]ederal courts apply the long-arm statute of the forum state to determine the existence of personal jurisdiction over the parties." *Kaliannan*, 2 F.4th at 733.

there. *Bros. & Sisters in Christ*, 42 F.4th at 952; *Walden v. Fiore*, 571 U.S. 277, 285 (2014); *Morningside Church, Inc.*, 9 F.4th at 619 (describing a defendant's contacts as needing to "be more than random, fortuitous, or attenuated" (quoting *Creative Calling Sols., Inc.*, 799 F.3d at 980)). "[F]or specific jurisdiction to exist, the defendant 'must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State . . . .'" *Bros. & Sisters in Christ*, 42 F.4th at 953 (quoting *Ford Motor Co.*, 592 U.S. at 359).

The Eighth Circuit Court of Appeals has established a minimum contacts analysis—guided by five factors—to assess a court's specific jurisdiction under the "totality of the circumstances." *Bros. & Sisters in Christ*, 42 F.4th at 952 (citing *Kaliannan*, 2 F.4th at 733). The five factors are as follows: "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties." *Whaley v. Esebag*, 946 F.3d 447, 452 (8th Cir. 2020) (quoting *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996)). "The first three factors are of 'primary importance' and the 'fourth and fifth factors carry less weight.'" *Bros. & Sisters in Christ*, 42 F.4th at 952 (quoting *Whaley*, 946 F.3d at 452).

In cases involving an intentional tort, the Eighth Circuit also looks to the *Calder* "effects test" established by the United States Supreme Court in *Calder v Jones*, 465 U.S. 783 (1984), as "an additional factor . . . [to] evaluat[e] a defendant's relevant contacts with the forum state." *Bros & Sisters in Christ*, 42 F.4th at 954 (quoting *Johnson v. Arden*, 614 F.3d 785, 796–97 (8th Cir. 2010)). The *Calder* "effects test" allows for the "assertion of personal jurisdiction over non-resident defendants whose acts are performed for the very purpose of having their consequences

felt in the forum state." *Johnson*, 614 F.3d at 796 (quoting *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390–91 (8th Cir. 1991)).

**C. The Court Cannot Exercise Personal Jurisdiction Over the Defendants**

As discussed above, the Eighth Circuit assesses according five factors whether the exercise of specific jurisdiction comports with due process requirements. *Bros. & Sisters in Christ*, 42 F.4th at 952; *Whaley*, 946 F.3d at 452. Then, because intentional torts are alleged by RWH Capital, the Court must also incorporate the *Calder* "effects test" as a sixth factor. *Bros. & Sisters in Christ*, 42 F.4th at 954; *Calder*, 465 U.S. 783. The Court concludes that the Defendants have not purposefully availed themselves of Nebraska, so the Court cannot exercise personal jurisdiction and must dismiss the case pursuant to Federal Rule of Civil Procedure. *See* Fed. R. Civ. P. 12(b)(2).

*1. The Five Factors Weigh Against the Court's Exercise of Jurisdiction*

The Court begins its assessment of specific jurisdiction with the third factor provided by the Eighth Circuit—the relation of the cause of action to the Defendants' contacts with Nebraska. *See Bros. & Sisters in Christ*, 42 F.4th at 952 ("For there to be specific jurisdiction, 'there must be an affiliation between the forum and the underlying controversy,' and where that connection is absent, 'specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." (cleaned up) (quoting *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 264 (2017))). In doing so, the Court incorporates its assessment of the first two factors provided by the Eighth Circuit, that is, the quantity and quality of any contacts. *Bros. & Sisters in Christ*, 42 F.4th at 953.

The Court finds that the Defendants lack any suit-related contacts with Nebraska such that no relationship has been established to support the exercise of personal jurisdiction over the Defendants. *See Walden*, 571 U.S. at 284. None of the Individual Defendants is domiciled in

Nebraska. Filing 4 at 1–2 (¶¶ 2–5); *see Kaliannan*, 2 F.4th at 733 ("We consider 'the defendant's contacts with the forum [s]tate itself, not the defendant's contacts with persons who reside there." (quoting *Walden*, 571 U.S. at 285)). The alleged claims arise from conduct and a breakdown of a contractual relationship in Florida, not Nebraska. Filing 4 at 3–5 (¶¶ 14–35); Filing 18-4 at 2–13 (¶¶ 9–73); *see Creative Calling Sols., Inc.*, 799 F.3d 975, 980 (8th Cir. 2015) ("[A] contract with a citizen of a State alone is insufficient to establish minimum contacts with that forum." (citing *Burger King Corp.*, 471 U.S. at 478)). Over the course of the relationship between the parties, the record indicates that Defendants had no awareness that RWH Capital had any connection to Nebraska. *See* Filing 18-4 at 1 (¶ 3); *see also Fastpath, Inc.*, 760 F.3d at 821 ("A defendant's contacts with the forum state must be sufficient so that a non-resident defendant should reasonably anticipate being haled into court there." (citing *World-Wide Volkswagen*, 444 U.S. at 297)). Even if RWH Capital is a citizen of each state in which its members are citizens, *see* 28 U.S.C. § 1332(c)(1), the "plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Furthermore, RWH Capital only recently registered as a foreign limited liability company in Nebraska on February 6, 2026. Filing 20-2 at 15; *see Morningside Church, Inc.*, 9 F.4th at 619 ("The defendant's connection with the forum must 'be more than random, fortuitous, or attenuated . . . ." (quoting *Creative Calling Sols., Inc.*, 799 F.3d at 980)).

The Court's evaluation of the record corroborates the Defendants' asserted lack of notice such that they could not "reasonably anticipate being haled into court" in Nebraska. *Morningside Church, Inc.*, 9 F.4th at 619 (quoting *Creative Calling Sols., Inc.*, 799 F.3d at 980). In its response to the Motion to Dismiss, RWH Capital asserts that "[s]ince its formation" it has "maintained its principal place of business and operations in Nebraska." Filing 19 at 1. RWH Capital further asserts it "has several customers and projects in Nebraska, but has never had any contracts or

business in the State of Florida." Filing 19 at 2 (citing Filing 19-2 at 1 (¶¶ 1–6)). Once jurisdiction was challenged, RWH Capital substantiated these pleadings with only an affidavit from Shane Osborn, the sole owner of RWH Capital, asserting that RWH Capital "has maintained its principal place of business and operations in Waterloo, Nebraska, since formation." Filing 19-2 at 1 (¶ 5). In contrast, the Defendants have offered Florida Secretary of State documents detailing that RWH Capital's principal place of business for the relevant years of conduct was either in West Palm Beach, Florida, or Boca Raton, Florida. Filing 20-2 at 5–12. According to the Florida Secretary of State, the only time the principal place of business for RWH Capital is registered under a Nebraska address is a filing made on February 5, 2026—roughly two months before filing this suit in the District of Nebraska and certainly after the disputed conduct occurred. Filing 20-2 at 13. Additionally, the Defendants offered Nebraska Secretary of State documentation that indicates that RWH Capital organized in Nebraska as a "Domestic LLC" on July 9, 2014, but then filed a "Statement of Dissolution" on January 27, 2015. Filing 20-2 at 14. The "Foreign Certificate of Authority" filed with the Nebraska Secretary of State on February 6, 2026, lists RWH Capital as a "Foreign LLC" with a principal office address in Waterloo, Nebraska. Filing 20-2 at 15. RWH Capital's exhibits also suggest that it conducted its business out of Florida. Filing 19-3 at 2 (noting the "RWH Energy" email signature image exclusively includes a Boca Raton, Florida, address). Therefore, the Court deduces that the "affidavits and exhibits" submitted by the Defendants refute the pleadings and the affidavit submitted by RWH Capital with no citation to any documents in support of jurisdiction. *Fastpath, Inc.*, 760 F.3d at 820 (quoting *K-V Pharm. Co.*, 648 F.3d at 592).

"Given the bare-bones nature of [RWH Capital's] allegations, the first three factors of our test—the nature and quality of [the Defendants'] contacts with [Nebraska], the quantity of such contacts, and the relation of [RWH Capital's] claims to those contacts—weigh against finding

personal jurisdiction." *Bros. & Sisters in Christ*, 42 F.4th at 953. On balance, RWH Capital fails to establish that the Defendants were ever aware they were dealing with a Nebraska company. *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co., KG*, 646 F.3d 589, 595 (8th Cir. 2011) (discussing the purposeful availment according to the *Calder* "effects test" that gives a defendant "clear notice that it is subject to suit" in a forum state (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Additionally, the fourth and fifth factors do not weigh in RWH Capital's favor. *See Bros. & Sisters in Christ*, 42 F.4th at 953–54. Although Nebraska has an interest in providing a forum for its residents, that interest cannot absolve the nature of RWH Capital's corporate relationship with Nebraska during the relevant period. *See* Filing 20-2. Additionally, at best, "the convenience of the parties is neutral." *Bros. & Sisters in Christ*, 42 F.4th at 954.

2. Calder *"Effects Test" Does Not Alter the Court's Assessment of the Defendants' Contacts with Nebraska*

The Court determines that the *Calder* "effects test" does not alter the assessment of Defendants' contacts with Nebraska. Nothing in the record indicates that the Defendants conducted activities "for the very purpose of having their consequences felt in the forum state." *Johnson*, 614 F.3d at 796 (quoting *Dakota Sportswear, Inc.*, 946 F.2d at 1391). Assuming that the Defendants could have anticipated that harm to RWH Capital would occur in Nebraska, "mere injury to a forum resident is not a sufficient connection to the forum." *Bros. & Sisters in Christ*, 42 F.4th at 954 (quoting *Walden*, 571 U.S. at 290). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Bros. & Sisters in Christ*, 42 F.4th at 954 (quoting *Walden*, *Walden*, 571 U.S. at 290). That requires a showing that the defendant "'uniquely or expressly' aimed its allegedly tortious act . . . at [the forum state]." *Bros. & Sisters in Christ*, 42 F.4th at 954 (quoting *Johnson*,

614 F.3d at 798). There is no plausible inference from the Amended Complaint or anywhere else in the record that Defendants aimed their conduct at this forum. Therefore, since "mere effects in the forum state are insufficient to confer personal jurisdiction," the Court maintains that the Defendants have not purposefully availed themselves of a Nebraska forum sufficient to justify the exercise of specific personal jurisdiction in this forum. *Bros. & Sisters in Christ*, 42 F.4th at 954 (quoting *Johnson*, 614 F.3d at 796).

*3. Summary*

Purposeful availment does not exist here. *Cf. Wade*, 100 F.4th at 993. Defendants had no notice they were working with a Nebraska company. The evidence proffered by Defendants explicitly contradicts RWH Capital's allegations and pleadings. Defendants did not take some act by which they purposefully availed themselves of the privilege of conducting activities in Nebraska. *See Ford Motor Co.*, 592 U.S. at 359–60. On the basis of the facts presented by the parties in their filings, Defendants could not have "reasonably anticipate[d] being haled into court" in Nebraska. *Burger King Corp.*, 471 U.S. at 486 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 297). Additionally, the Nebraska residency of the owner of RWH Capital, Shane Osborn, is not sufficient to establish minimum contacts of Defendants with the State of Nebraska. *Walden*, 571 U.S. at 285. Further, even if RWH Capital has some operations in Nebraska, that does not mean the Defendants can be haled into court in Nebraska. *Bros. & Sisters in Christ*, 42 F.4th at 954. Therefore, the Court concludes that it cannot exercise personal jurisdiction over Defendants. The case is accordingly dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2).

## III. CONCLUSION

The exercise of jurisdiction in this case does not comport with due process. The Court concludes it is unnecessary to reach the Defendants' remaining arguments for dismissal. Upon the foregoing,

IT IS ORDERED that the Defendants' Motion to Dismiss, Filing 18, is granted, and therefore this case is dismissed.

IT IS FURTHER ORDERED that judgment shall enter in favor of the Defendants and against RWH Capital.

Dated this 7th day of October, 2026.

BY THE COURT:

Brian C. Buescher
Chief United States District Judge